THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**RAMÓN ROSA-HANCE,**

**Petitioner,**

**v.**

**UNITED STATES OF AMERICA,**

**Respondent.**

**Civ. No. 18-1313 (ADC)**
**Related to**
**Civ. No. 17-1186 (ADC)**
**Crim. No. 11-00388 [26] (ADC)**

## OPINION AND ORDER

Before the Court is a pro se motion to set aside, vacate, or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Ramón Rosa-Hance ("petitioner") on May 22, 2018, deemed *nunc pro tunc* filed November 14, 2017. **ECF No. 2**. Respondent United States of America ("government") filed a response in opposition. **ECF No. 19**. For the following reasons, petitioner's motion is **DENIED**. **ECF No. 2**.

## I. PROCEDURAL HISTORY

This is a multi-defendant case in which a grand jury retuned a two-count indictment on October 6, 2011, against petitioner and 81 other individuals related to a drug trafficking conspiracy. **Crim. No. 11-388, ECF No. 3**. The Court issued an arrest warrant for petitioner the same day. **Crim. No. 11-388, ECF No. 5**.

Around March 1, 2012, petitioner was arrested for a drug offense in Massachusetts. On March 7, 2012, while petitioner was in state custody in Massachusetts, the United States

Marshal's Office (USMO) for the District of Massachusetts filed a detainer with the Bristol County House of Corrections in Massachusetts (the "2012 detainer"). The 2012 detainer included a copy of this Court's October 6, 2011 arrest warrant. **Crim. No. 11-388, ECF Nos. 3369** at n.1; **3369-1**. While the 2012 detainer originated with the Massachusetts USMO, the government asserts the Massachusetts office intended to file it on behalf of the USMO for Puerto Rico. Nothing on the face of the 2012 detainer communicates this. The Government also recognizes the detainer was incorrectly labeled as "based on violation of probation and/or supervised release" and references a Massachusetts arrest warrant, rather than the October 6, 2011 Federal indictment and arrest warrant from this District. **Crim. No. 11-388, ECF Nos. 3369** at 1, n1; **3369-1**. The government has no explanation for these errors. The 2012 detainer instructed the Correctional Facility personnel to inform petitioner of the detainer and to confirm their receipt of the detainer via returned mail. The 2012 detainer also specifically states, "[t]he notice and speedy trial requirements of the Interstate Agreement on Detainers Act [(IADA or IAD)] do NOT apply to this detainer." **Crim. No. 11-388, ECF No. 3369-1**.

On September 30, 2014, petitioner received a sentence of three-and-a-half years' imprisonment for the Massachusetts offense. **Crim. No. 11-388, ECF No. 3672** at 15. On November 3, 2014, the USMO for the District of Puerto Rico filed a detainer with the Warden of the Massachusetts Correctional Institute in Walpole ("MCI Cedar Junction") where petitioner was incarcerated, informing that the District of Puerto Rico had issued an arrest warrant against

petitioner based on drug conspiracy charges (the "2014 detainer"). The 2014 detainer instructed the Warden to advise petitioner of the detainer and his IADA right to demand a speedy trial. **Crim. No. 11-388, ECF No. 3369-2**. The 2014 detainer informed petitioner how to exercise that right, noting that any delays will be attributable to him and warning him that he "must periodically inquire as to whether [his] written notice of request ... ha[d] been received by the appropriate U.S. Attorney and appropriate U.S. District Court." **Crim. No. 11-388, ECF No. 3369-2**. There is no indication on record that petitioner became aware of the federal charges against him until he was informed of the 2014 detainer. Petitioner completed some of the forms necessary under the IADA to assert his speedy trial right.[1] The Warden mailed by certified mail copies of those forms. However, the Warden did not address the mailings to the recipients required under the IADA as specifically identified on the 2014 detainer: the U.S. Attorney for the District of Puerto Rico and this Court. The package was sent attention "Wm Meadow-Marcus, Investigation Research Specialist" to "U.S. District Court, Judicial District Puerto Rico[,] 150 Carlos Chardon Ave, Room 300[,] Hato Rey, Puerto Rico 00918." **Crim. No. 11-388, ECF No. 3390** at 2-3.

As far as the record reveals, on December 17, 2014, an "I. Alvarado" signed a certified mail receipt of delivery for the package sent by MCI Cedar Junction. **Crim. No. 11-388, ECF No.**

---

[1] At the July 21, 2015 status conference, defense counsel volunteered that while he had received a copy of one of the required documents he "still need[ed] another form which ha[s] to be completed" which he did not have. **ECF No. 4213** at 9.

**3355-4** at 1. The record is devoid of facts until April 23, 2015, when the Court granted the Government's petition for writ of *habeas corpus ad prosequendum*, thereby ordering the Warden of MCI Cedar Junction to deliver petitioner into the custody of the USMO for the District of Puerto Rico. **Crim. No. 11-388, ECF No. 3390** at 2-3.

On May 22, 2015, pursuant to the writ of *habeas corpus ad prosequendum*, petitioner was transferred to the Metropolitan Detention Center in Guaynabo ("MDC-Guaynabo"), Puerto Rico for prosecution of the 2011 charges. **Crim. No. 11-388, ECF No. 3672** at 11-12. As summarized by this Court in the 2011 case, Crim. No. 11-388,

> On June 12, 2015, the record reflects that defendant was arrested and brought before a U.S. Magistrate Judge for an Initial Appearance, during which Attorney Carlos Sánchez La Costa ("Attorney Sánchez") was appointed to represent defendant, and defendant was ordered temporarily detained. **ECF Nos. 3284, 3285**. On June 25, 2015, a bail hearing was held before a U.S. Magistrate Judge, with bail being denied. **ECF No. 3307**. At the same hearing, Attorney Sánchez informed that defendant would be "filing a motion for STA and assertion of IAD's Rights." *Id*. On June 27, 2015, defendant filed a self-titled "Continued Assertion to Fair and Speedy Trial." **ECF No. 3304**. Defendant asserted that he had "asserted and continues to assert his right to a speedy and public trial by an impartial jury and his right to be confronted with the witnesses against him." *Id*. at 3.[] Defendant cited the Speedy Trial Act, the Sixth Amendment, and the IADA, but did not argue that any of these had been actually violated. *See generally* **ECF No. 3304**.
>
> At a status conference on July 21, 2015, Attorney Sánchez informed that, through the prison system, defendant "requested prompt trial date in 12/2014." **ECF No. 3336**. The Court clarified that the docket for this case did not reflect that defendant had made any pro se requests for a prompt trial date. *Id*. The Court granted defendant until August 7, 2015 to file any dispositive motions; a deadline that was extended upon defendant's request until August 10, 2015. **ECF Nos. 3336, 3345, 3351**.

**Crim. No. 11-388, ECF No. 3390** at 3 (footnote omitted).

On August 10, 2015, petitioner, filed a motion to dismiss the drug conspiracy indictment arguing that "he was deprived of his rights under the Interstate Agreement on Detainers Act (IADA)." **Crim. No. 11-388, ECF No. 3355**. The Court denied the motion to dismiss, finding that petitioner did not follow IADA procedures to trigger his right under the statute until his June 27, 2015 speedy trial motion; the Court attributed the IADA mailing error to petitioner, in accordance with IADA precedent. **Crim. No. 11-388, ECF No. 3390** at 6-9. Petitioner subsequently filed a motion in limine and a motion to suppress, **Crim. No. 11-388, ECF Nos. 3408**, **3501**, which the Court terminated upon petitioner's acceptance of a plea agreement on January 14, 2016. **Crim. No. 11-388, ECF No. 3627**. The Court sentenced petitioner on April 12, 2016, to 132 months of imprisonment followed by 10 years of supervised release. **Crim. No. 11-388, ECF No. 3682**. Petitioner appealed on April 22, 2016. The Court of Appeals affirmed on June 16, 2017. **Crim. No. 11-388, ECF Nos. 3687, 3887**.

Petitioner now seeks to vacate, set aside, or correct his sentence, arguing that he received ineffective assistance of counsel because his attorney 1) did not move to dismiss his indictment on Sixth Amendment speedy trial grounds and, 2) induced him to plead guilty by providing

incorrect assurances that the plea would not affect his ability to appeal the denial of the motion

to dismiss.[2] **Civ. No. 17-1186, ECF No. 12** at 3-4.[3]

## II. DISCUSSION

To prevail on a claim of ineffective assistance of counsel, a party must prove "that

counsel's performance was constitutionally deficient, meaning that counsel made errors so

serious that 'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth

Amendment,' and that the deficient performance prejudiced the defense." *U.S. v. LaPlante,* 714

F.3d 641, 648 (1st Cir. 2013) (quoting *Strickland v. Washington,* 466 U.S. 668, 687 (1984)). Both

prongs of the analysis must be satisfied. *U.S. v. Caparotta,* 676 F.3d 213, 219-20 (1st Cir. 2012).

### A. Sixth Amendment Claim

"To determine whether a defendant has been deprived of the Sixth Amendment right to

a speedy trial," courts consider the four factors outlined by the Supreme court in *Barker v. Wingo,*

407 U.S. 514 (1972), "which include the length of delay; the reason assigned by the government

for the delay; the defendant's responsibility to assert his right; and prejudice to the defendant,

particularly 'to limit the possibility that the defense will be impaired.'" *U.S. v. Handa,* 892 F.3d

95, 101 (1st Cir. 2018) (quoting *Barker,* 407 U.S. at 532).

---

[2] Petitioner also asserts that the Court wrongly denied his motion to dismiss. **Civ. No. 17-1186, ECF No. 12** at 7. The Court will not address this challenge within the context of this section 2255 motion. *See Trenkler v. U.S.,* 536 F.3d 85, 97 (1st Cir. 2008) (discussing the scope of issues properly addressed in a section 2255 motion).
[3] Petitioner originally filed his section 2255 motion in Civil No. 17-1186. The Court dismissed that motion without prejudice due to petitioner's then-pending appeal and ordered it refiled in the present case, *nunc pro tunc.* However, petitioner's memorandum of law in support of his motion appears only on the docket of Civ. No. 17-1186.

"The Sixth Amendment right to a speedy trial attaches upon formal accusation. In the typical case, this means either arrest or indictment, whichever comes first." *U.S. v. Dowdell*, 595 F.3d 50, 61 (1st Cir. 2010) (citing *U.S. MacDonald*, 456 U.S. 1, 6–7 (1982), *U.S. v. Casas*, 425 F.3d 23, 33 (1st Cir. 2005)). For petitioner, this date is the date of the indictment—October 6, 2011. Between that date and his January 2016 guilty plea approximately 51 months, or 4.25 years passed. "While [t]here is no bright-line time limit dividing the lengths that trigger further *Barker* inquiry from those that do not, a [d]elay of around one year is considered presumptively prejudicial, and the presumption that delay prejudices the defendant intensifies over time." *Handa*, 892 F.3d at 102 (alterations in original) (citations and internal quotation marks omitted). The 4.25-year timespan here renders the delay presumptively prejudicial and warrants further inquiry into the *Barker* factors. *See Barker*, 407 U.S. at 530.

The next *Barker* factor, the reason for the delay and "whether the government or the criminal defendant is more to blame for that delay," *Doggett v. U.S.*, 505 U.S. 647, 651 (1992), amounts to "the focal inquiry," *U.S. v. Santiago-Becerril*, 130 F.3d 11, 22 (1st Cir. 1997) (citation and internal quotation marks omitted). There are three periods of delay to assess in this matter, to wit: 1) from the October 2011 indictment to the 2014 detainer; 2) from the 2014 detainer to the submission of the Writ of *habeas corpus ad prosequendum* and; 3) from the Writ to trial.

### 1. October 6, 2011 Indictment to November 3, 2014 detainer: Approximately 37 Months[4]

Petitioner attributes most of the delay in his case to the government's errors in the 2012 detainer, namely the detainer's pronouncement that it did not trigger the IADA's notice and speedy trial provisions. He states, "had the government not committed the negligent error of issuing an improper detainer Notice in 2012, petitioner would have invoked his right at that time also." **Civ. No. 17-1186, ECF No. 12** at 9. The government admits the 2012 detainer was incorrectly stylized, offering no account of what occurred in the wake of the detainer's issuance or any explanation for the errors in the detainer. It is unclear when petitioner even received notice of the 2012 detainer.

Instead, the government argues that because the USMO issued the 2012 detainer around March 7, 2012, while petitioner was a pre-trial detainee in Massachusetts, not a prisoner, it has no bearing on his speedy trial claim. As the government cites, "the IAD applies only to prisoners serving a sentence of imprisonment and not pretrial detainees," *see U.S. v. Gezelman*, 522 F.Supp.2d 344, 346 (D. Mass. 2007) (citing *U.S. v Hart*, 993 F.2d 80, 84 (1st Cir. 1991)); 18 U.S.C. App. § 2(a). In other words, the government contends that the 2012 detainer, regardless of its

---

[4] Evidence on record supports the determination that from October 6, 2011 (issuance of the federal indictment) until petitioner's arrest on state charges in Massachusetts on March 11, 2012, petitioner was not in custody and resided in Massachusetts. As such, this five (5) month period is excludable from speedy trial dispositions under IADA, Sixth Amendment, and STA.

imperfections, properly communicated that it did not spark the IADA notice and speedy trial provisions.

While that may be a significant factor for a court analyzing an individual's affirmation of their *IADA* speedy trial rights, it is by no means determinative under a Sixth Amendment calculus. An individual's Sixth Amendment right to a speedy trial can be infringed regardless of whether the corresponding right under the IADA or, for the matter, the Speedy Trial Act, is violated. *See U.S. v. Casas*, 425 F.3d 23, 33 (1st Cir. 2005). The analyses are distinct.

Moreover, "[a]lthough the IAD contains no explicit requirement that a state lodge a detainer whenever it learns that a person under indictment is being held in another jurisdiction, the compact was crafted with the policy and purpose of 'encourag[ing] the expeditious and orderly disposition of [untried] charges.'" *Rashad v. Walsh*, 300 F.3d 27, 37 (1st Cir. 2002) (quoting 18 U.S.C., App. § 2, art. I) (last two alterations in original). As the First Circuit Court of Appeals has recognized, "even though the failure to lodge a detainer is not itself a per se violation of a defendant's speedy trial right, it is a significant misstep, for which the state must bear responsibility." *Id*. Here, the government lodged the 2012 detainer containing multiple errors, a similar and "significant misstep," for which this Court holds the government accountable. This is irrespective of the fact that there is no information in the record to suggest the government's errors were deliberate; they were "plainly negligent" and this therefore "cuts in favor of the

petitioner's speedy trial claim" under the IADA.[5] *Id.* (citing *Doggett,* 505 U.S. at 656-57). "Holding otherwise would allow [the government] to circumvent the IAD with impunity—a result that would contravene both the intent behind the IAD and the Supreme Court's admonition that 'the primary burden ... to assure that cases are brought to trial' rests with prosecutors, not defendants." *Id.* at 37-38 (omission in original) (quoting *Barker,* 407 U.S. at 529).

The record reflects that from October 6, 2011, through March 1, 2012, petitioner was freely living in Massachusetts. It was not until March 1, 2012, that he was arrested and charged in Massachusetts. This is a five-month period attributable to petitioner.

The government identifies petitioner's arrest, prosecution, and imprisonment in the Massachusetts drug case as accounting for nearly the entirety of the delay.[6] **ECF No. 19** at 6. The government does not offer any other explanations for the delay. The existence of concurrent prosecutions against an individual conducted by different jurisdictions does not, by any means, unequivocally excuse the government's delay in prosecuting this case. In fact, the weight to be given concurrent prosecutions under *Barker* appears to present a matter of first impression in this circuit and manifests a split among the circuits that have addressed it. *See U.S. v. Myers*, 930 F.3d 1113, 1120-21 (9th Cir. 2019) (collecting cases). The more conservative approach is that adopted by the Ninth and Tenth Circuits wherein the Appellate Courts have held, "'awaiting

---

[5] Because if IADA only applies to "prisoners serving a sentence," defendant was not sentenced in Massachusetts until September 30, 2014. Prior to, he was a "pre-trial detainee."

[6] The time related to the Massachusetts state prosecution up to the filing of the 2014 Writ was approximately 36 months.

the completion of another sovereign's prosecution may be a plausible reason for delay in some circumstances, but that does not necessarily mean that it is a justifiable excuse in every case.'" *Id.* at 1121 (quoting *U.S. v. Seltzer*, 595 F.3d 1170, 1177-78 (10th Cir. 2010)). *But see, e.g., U.S. v. Schreane*, 331 F.3d 548, 554 (6th Cir. 2003) ("'[S]imply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay that weighs in favor of the government.'" (quoting *U.S. v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998)).[7]

Although "[w]hen a defendant violates the laws of several different sovereigns, as was the case here, at least one sovereign, and perhaps more, will have to wait its turn at the prosecutorial turnstile," *Grimmond*, 137 F.3d at 828; it is nonetheless "the government's burden to explain why such a wait was necessary in a particular case," *Seltzer*, 595 F.3d at 1178. After all, the Supreme Court dictates that "any inquiry into a speedy trial claim necessitates a functional analysis of the right *in the particular context of the case.*" *Barker*, 407 U.S. at 522 (emphasis added). Thus, "'[t]he mere fact that the defendant was incarcerated on a previous charge for a portion of the delay does not by itself excuse the delay.'"[8] *Myers*, 930 F.3d at 1121 (quoting *Seltzer*, 595 F.3d at 1178).

---

[7] From the defense perspective, simultaneous prosecutions in different districts may inevitably delay one, since defending either case likely requires defendant's presence within the jurisdiction in which each case is tried.

[8] As petitioner adeptly notes, incarceration does not render an individual unavailable to the government. **Civ. No. 17-1186, ECF No. 12** at 9. *See Dickey v. Florida*, 398 U.S. 30, 33 (1970) ("[T]here have long been means by which one jurisdiction, for purposes of a criminal trial, can obtain custody of a prisoner held by another."); *Smith v. Hooey*, 393 U.S. 374, 377 (1969) (holding that an individual's confinement in prison does not absolve the government "from any duty at all under the [Sixth Amendment] constitutional guarantee"). *See also* Senate Report No. 91-1356, 1970 U.S.C.C.A.N. 4864, 4864 (citing *Dickey* and *Smith* in its explanation for the enactment of the IADA).

The state prosecution entailed a period of approximately 30 months (March 1, 2012, to September 30, 2014, when sentenced). Here, the government offers no reason why it deferred to the Massachusetts prosecution, except that it was the District in which defendant was originally arrested upon the filing of the 2012 charge. While defendant was charged in 2011 in the Puerto Rico District, his whereabouts apparently remained unknown to Puerto Rico authorities until he was later located in 2014 in the Massachusetts District. Other courts that have considered this question have looked to the complexity of the pending charges, *Seltzer*, 595 F.3d at 1178; whether the charges are related and, i.e., may involve overlapping witnesses or significant administrative or safety burdens, *U.S. v. Ellis*, 622 F.3d 784, 791 (7th Cir. 2010), *as amended* (Sept. 27, 2010) (collecting cases), *U.S. v. Thomas,* 55 F.3d 144, 150-51 (4th Cir. 1995); whether delay is related to a good faith interlocutory appeal by the government, *U.S. v. Loud Hawk*, 474 U.S. 302, 315 (1986), or a missing witness, *Barker*, 407 U.S. at 531; among other factors. In recognition that the government attempted to notify petitioner of the 2011 indictment via the 2012 detainer—though ineffectively executed—the Court weighs this factor (and the 30-month period) neutrally. *Id.* (noting that reasons for delaying a trial may be weighed neutrally, for, or against the government).

### 2. November 3, 2014 detainer through April 23, 2015 Writ: Approximately Six Months

As explained above, this Court held that petitioner's assertion of his IADA speedy trial rights pursuant to the terms of the November 3, 2014 detainer were improperly delivered and

the law, under the IADA, places the responsibility for ensuring proper delivery on him. *See* **Crim. No. 11-388, ECF No. 3390** at 6-9. The 2014 detainer's language, that petitioner acknowledged understanding, warned him "of the harsh consequences of not following up as to whether his request had been properly delivered." **Crim. No. 11-388, ECF No. 3390** at 6-9 (construing *Fex v. Michigan*, 507 U.S. 43 (1993) and its progeny). After all, it is undisputed that government officials most literally caused the delay—prison officials misaddressed the envelopes and the receiving government officials sat on their mail. However, petitioner was warned to exercise diligence to ensure catching this very snag. Accordingly, the Court considers this six-month block to weigh equally against each party.

### 3. April 23, 2015 Writ to January 14, 2016 Guilty Plea: Approximately Nine Months

The mile marker of petitioner's writ of *habeas corpus ad prosequendum* delineates the point at which the case was actively prosecuted. The Court noted in a previous ruling, "Defendant's desire for a speedy trial has, more recently, appeared to wane, given that, on September 2, 2015, he filed a motion to continue the trial scheduled by the Court to begin on September 14, 2015, 'for at least sixty days….'" **Crim. No. 11-388, ECF No. 3390** at 3, n.3. The Court denied that motion. **Crim. No. 11-388, ECF Nos. 3389.** The time from the writ to petitioner's change of plea hearing shows an active docket, containing pretrial motions filed by petitioner—a motion in limine and motion to suppress—as well as active plea negotiations. **Crim. No. 11-388, ECF No. 3720** at 4-7. Accordingly, this eight-to-nine-month segment measures against petitioner.

The next factor under *Barker* is consideration of whether and to what extent the petitioner asserted his right to a speedy trial. "The Supreme Court has warned against assigning talismanic significance to a lone assertion of the speedy trial right." *Rashad*, 300 F.3d at 45 (citing *Barker*, 407 U.S. at 528-29). Here, petitioner asserted his right via the 2014 detainer, during arraignment, a status conference[9], through a motion titled "Continued Assertion to Fair and Speedy Trial," and again through a motion to dismiss. The Court ascribes neutrality to the dearth of information as to whether petitioner could have, would have, or was aware of his ability to assert the right sooner than the 2014 detainer where there's no indication that petitioner had knowledge of the 2011 indictment or 2012 detainer prior to that point.

Last, *Barker* instructs the Court to consider whether and to what extent petitioner was prejudiced by the delay. Petitioner asserts that "[w]hile it may[] be difficult to pinpoint specific instances of prejudice, the cumulative effect of it all was detrimental" noting, "[t]he length of time had destroyed evidence and degraded memories" and "deprived [him] of the opportunity to provide assistance to the government and affect the outcome of his matter," to have his state and federal sentences run concurrently, and to take "advantage of certain programming

---

[9] The status conference held on July 21, 2015, constituted defendant's first conference within the case originally indicted on October 6, 2011. For practical purposes defendant was considered "at large" as a fugitive until it was determined by PR authorities in 2014 that he was serving a sentence in the District of Massachusetts. It appears defendant was removed to Puerto Rico prior to completion of the state sentence. According to the Pretrial Services Report during 2011 and up to March 1, 2012, defendant was in the free community. On March 1, 2012, he was arrested and charged in Massachusetts and subsequently sentenced on September 30, 2014. He completed service of the sentence by July 2015, while in the Puerto Rico District facing federal charges. **ECF No. 4213** at 2-7.

opportunities in the Massachusetts DOC and potential early satisfaction of his state sentence." **Civ. No. 17-118, ECF No. 12** at 9-10. The government characterizes these prejudice claims as "'merely conclusory, contradicted by the record, or inherently incredible.'" **ECF No. 19** at 6. (quoting *Ellis v. U.S.*, 313 F.3d 636, 641 (1st Cir. 2002)).

"[C]onsideration of prejudice is not limited to the specifically demonstrable." *Doggett v. U.S.*, 505 U.S. 647 (1992). "[A]ffirmative proof of particularized prejudice is not essential to every speedy trial claim." *Id*. "And though time can tilt the case against either side, one cannot generally be sure which of them it has prejudiced more severely." *Id.* (citation omitted). Courts recognize "that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* Nonetheless, "presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay." *Id*. (citation omitted).

The Court agrees with the government's contention that most of petitioner's assertions of prejudice are too speculative to carry weight in this analysis, namely, petitioner's claims that a timely prosecution would have allowed him to become a government witness and thereby negotiate a more favorable outcome or that the delay affected his ability to secure an early release from the Massachusetts sentence. The Court rejects petitioner's assertion that time likely jeopardized the evidence in the case where the government actively prosecuted the majority of

petitioner's 81 co-defendants throughout the period in question, indicating the ongoing availability of relevant evidence on both sides of the case. The Court also rejects petitioner's allegation that he lost a possible opportunity of receiving a sentence which would run concurrently with the term he was serving in Massachusetts. The record reflects petitioner requested that the term of his imprisonment served in connection to his conviction in Massachusetts to be credited from his federal sentence, arguing that the two matters involved related conduct. **Crim. No. 11-388, ECF Nos. 3625** at 5, **3681**. That the trial Court denied the request weighs strongly against petitioner's claim that the delay stripped him of the opportunity to have the Massachusetts sentence mitigate the federal sentence. *See, e.g., U.S. v. Cabral*, 475 F.2d 715, 719–20 (1st Cir. 1973) (abrogated on other grounds as recognized in *U.S. v. Dowdell*, 595 F.3d 50 (1st Cir. 2010)) (suggesting that a defendant's argument that he missed the opportunity of concurrent sentences would be insufficient under *Barker* where the sentencing court declined other means of crediting the state sentence).

In sum, while a 4.25 year delay may weigh in a petitioners favor, under the specific facts of this case, the majority of the elapsed 51 months weigh either neutrally or only moderately in petitioner's favor. Likewise, beyond the gossamer threads of speculation and surmise, the Courts finds that no prejudice weighs in petitioner's favor. Ultimately, the scales do not weigh strongly in petitioner's favor in consideration of the public's right to have an indicted individual

nonetheless brought to justice. *See U.S. v. Ewell,* 383 U.S. 116, 121 (1966) (recognizing a need to "protect[] the societal interest in trying people accused of crime").

The record reflects petitioner's attorney carefully considered bringing speedy trial arguments under the IADA, Speedy Trial Act, and Sixth Amendment. During the June 25, 2015 Arraignment/Bail Hearing, counsel "informed that [he] will be filing a motion for STA and assertion of IAD's Rights." **Crim. No. 11-388, ECF No. 3307**. Two days later, counsel then filed a motion for Speedy Trial, asserting his client's rights under the Speedy Trial Act, Sixth Amendment, and IADA. **Crim No. 11-388, ECF No. 3304** at 1-2. During the July 21, 2015 status conference, counsel explained to the Court he required additional time "to gather relevant information and file [a] motion to dismiss, if necessary," again referencing petitioner's speedy trial rights.[10] **Crim. No. 11-388, ECF No. 3337**.

That counsel chose not to raise a claim under the Sixth Amendment, especially given the analysis above that success on such a claim was, at best, unclear, does not reflect ineffective assistance of counsel. The IADA defense that counsel presented turned on a question of statutory interpretation that turned on solid evidence of the December 2014 certified mailing receipt and the lack of direct guidance from the First Circuit Court of Appeals on the matter at that time. And, even then, he sought and was granted an extension of time to file that motion. On the other

---

[10] The record reflects counsel volunteered being in need to investigate and get an additional document petitioner had to file regarding his "interstate agreement detainer" document which he did not have. Further, he asked and was granted until August 7, 2020, to file any related dispositive motions. **ECF No. 4213** at 8-9.

hand, the *Barker* analysis affords the Court great discretion and involves a substantial fact-specific inquiry, that, as discussed above likely would have been unsuccessful.[11]

"[E]ven if reasonable minds could disagree about what defense strategy would have been best in this case … 'the proper standard for [measuring] attorney performance is that of reasonably effective assistance' as guided by 'prevailing professional norms' and consideration of 'all the circumstances' relevant to counsel's performance." *See Pina v. Maloney*, 565 F.3d 48, 56 (1st Cir. 2009) (second alteration in original) (quoting *Strickland*, 466 U.S. at 687). And, "[t]here are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689. All told, petitioner's counsel provided reasonably effective assistance here.

**B. Knowing, Intelligent, and Voluntary Plea**

Petitioner argues that he "signed the plea agreement only after being assured by his lawyer that he could still appeal the timeliness of his indictment," and that "had he known he would be required to waive all appellate rights" by accepting the plea, he would have pursued trial. **Civ. 17-1186, ECF No. 12** at 12.

> A defendant who was warned of the usual consequences of pleading guilty and the range of potential punishment for the offense before entering a guilty plea must make two showings in order to set that plea aside as involuntary. First, he must show that some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea.

---

[11] For purposes of IADA, petitioner was under "prisoner" status being sentenced in Massachusetts on September 30, 2014.

*Ferrara v. U.S.*, 456 F.3d 278, 290 (1st Cir. 2006). In other words, "absent a good reason for disregarding them," "a court is entitled to give weight to the defendant's statements at his change-of-plea colloquy." *U.S. v. Santiago Miranda,* 654 F.3d 130, 138 (1st Cir. 2011) (citation and internal quotation marks omitted). This is because "a defendant's 'declarations in open court carry a strong presumption of verity.'" *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Second, the petitioner "must show that the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice." *Ferrara*, 456 F.3d at 290.

Here, petitioner did file an appeal and the appointed appellate attorney "communicated extensively" with petitioner regarding the issues petitioner wanted to present on appeal and "addressed each" with petitioner. **USCA No. 16-1521, Docket 6048683** at 11, n.3. Included in that list was petitioner's desire to challenge the Court's denial of his motion to dismiss. **USCA No. 16-1521, Docket 6048683** at 11-15. Excluded from that list was any mention by petitioner that trial counsel assured him the plea deal did not affect the appealability of the motion to dismiss or that he felt misadvised or misled by trial counsel regarding the motion's appealability. It is reasonable to believe that petitioner would have rebutted appellate counsel's belief that the motion to dismiss was not appealable with his present claim that his plea relied upon the motion's appealability. He did not do so. Appellate counsel also spoke with trial counsel about petitioner's arguments on appeal, concluding that petitioner's case did not present any non-frivolous matters for appeal. The First Circuit Court of Appeals agreed, holding, "The appeal

waiver in the plea agreement applies here and was valid, and we see no non-frivolous arguments to be made that enforcement of the waiver would work a miscarriage of justice." **Crim No. 11-388, ECF No. 3887**. That the Appellate Court deemed petitioner's appeal unsuccessful does not render his trial counsel ineffective or his plea involuntary.

## III. CONCLUSION

Petitioner's motion under 28 U.S.C. §2255 is **DENIED**. **ECF No. 2** inasmuch as counsel was not ineffective for having chosen not to assert a Sixth Amendment violation to speedy trial while asserting violations under IADA and STA**.** The Clerk of Court is to enter judgment. The Court will **GRANT** a certificate of appealability where the manner and magnitude of weight to be afforded concurrent prosecutions under *Barker* is a matter of debate amongst Circuit Courts in which the First Circuit Court of Appeals seemingly has yet to participate. *See* 28 U.S.C. § 2253(c)(2).

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of September 2021.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**